UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CRAIG STEVEN MACKENZIE**, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-00411 (TNM) |
| **MARCIA L. FUDGE,** *Secretary, U.S. Department of Housing and Urban Development*,[1] *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Mulligans are for golf, rarely for court. Plaintiff Craig MacKenzie sues the U.S. Department of Housing and Urban Development ("HUD"), the Department of Justice ("DOJ"), and their respective agency heads in connection with a complaint he filed with HUD against the City of Dallas, Texas. Because he brought and lost the same claims in another federal court several years ago, MacKenzie cannot relitigate them here. The Court will dismiss the case.

---

[1] Under Fed. R. Civ. P. 25(d), the Court substitutes Marcia L. Fudge, the current Secretary, for Benjamin Carson, her predecessor.

**I.**[2]

Over a decade ago, MacKenzie and his business partner Curtis Lockey, Jr. sought to redevelop a commercial property in downtown Dallas. Compl. at 5, ECF No. 1.[3] Their joint entity—1600 Pacific Building L.P.—secured approval from the Dallas City Council as well as $102 million in financing. *See U.S. ex rel. Lockey v. City of Dallas*, 576 F. App'x 431, 433 (5th Cir. 2014). But the public funding quickly evaporated, and construction stalled. *Id.*

In February 2010, 1600 Pacific Building L.P. filed a discrimination complaint with HUD under the Fair Housing Act ("FHA"). Compl. at 5–6. It alleged that the City of Dallas had intentionally impeded the project because it did not want the low-income housing development in the downtown area. *Id.* While HUD investigated the claim, MacKenzie and Lockey filed a False Claims Act case against Dallas in the U.S. District Court for the Northern District of Texas. *Id.* at 7–8. They accused Dallas of engaging in discriminatory housing practices while falsely certifying that it would "affirmatively further fair housing," which was a condition for receiving certain federal grant money. *U.S. ex rel. Lockey v. City of Dallas, Tex.,* No. 3:11-CV-354-O, 2013 WL 268371, at *3 (N.D. Tex. Jan. 23, 2013). MacKenzie and Lockey proceeded

---

[2] For this background, the Court relies on the pleadings and their exhibits, as well as facts determined in related cases. The Court looks beyond MacKenzie's Complaint for two reasons. *First*, the Government moves to dismiss on grounds that permit the Court to look outside the pleadings. *See infra* Section II. *Second*, the Court must construe a *pro se* Complaint together with the Plaintiff's later filings in the case. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). MacKenzie appends many documents from the proceedings in Texas to his opposition to the motion to dismiss. *See* Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss Ex. 1, ECF No. 13-1. For its analysis, the Court looks outside the pleadings only when the law allows.

[3] All page citations refer to the pagination generated by the Court's CM/ECF system and all exhibit numbers refer to the numbered attachments to the CM/ECF filings.

with the claims after the United States declined to intervene, but the Northern District dismissed the case on jurisdictional grounds. *Id.*

HUD concluded its investigation in November 2013 and determined that Dallas violated Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, and Section 109 of the Housing and Community Development Act of 1974. *See MacKenzie v. Castro*, No. 3:15-CV-0752-D, 2016 WL 3906084, at *1 (N.D. Tex. July 19, 2016) ("*MacKenzie I*"). Dallas contested the results, and after negotiations the parties reached a "Voluntary Compliance Agreement" ("VCA"). *Id.*

Neither MacKenzie nor Lockey joined the negotiations or signed the VCA. *Id.* They instead withdrew their complaint with HUD, and MacKenzie, proceeding *pro se*, sued HUD and its leadership in the Northern District of Texas in March 2015. *Id.* MacKenzie alleged that HUD's actions during the Dallas investigation "resulted in a manifest failure to administer the programs and activities . . . in a manner affirmatively to further the policies" of the FHA and "deprived him of his constitutional due process rights." *Id.* (cleaned up). MacKenzie amended his complaint twice. He first added allegations that HUD violated various non-discretionary provisions of the FHA. *See id.* at *2 n.5. Then he added DOJ and the Attorney General as defendants, alleging that they too violated the FHA and his due process rights. *See MacKenzie v. Castro*, No. 3:15-CV-0752-D, 2017 WL 1021299, at *2 (N.D. Tex. Mar. 16, 2017) ("*MacKenzie II*").

The Northern District dismissed all charges. In an initial order, the court found that (1) MacKenzie had not pleaded a "final agency action" under the APA for HUD's closure of its investigation of the FHA complaint, *id.* at *5–6; (2) he had another "adequate remedy in a court," which under the APA barred his claim against HUD for closure of the investigation, *id.* at

3

*6–8; (3) he failed to plausibly plead that HUD had to issue a charge on behalf of 1600 Pacific Building L.P. on the FHA complaint, *id.* at *8–9; (4) he had another adequate remedy to obtain relief for his claim that HUD failed to issue a charge against Dallas, *id.* at *10; and (5) he failed to state a claim that HUD violated the FHA by entering into the VCA with Dallas, *id.* at *11–12.

MacKenzie's claims against the DOJ defendants and his due process claims against the HUD defendants survived—but not for long. The Northern District dismissed the remaining claims in a second order. *See MacKenzie v. Carson*, No. 3:15-CV-0752-D, 2017 WL 5626349 (N.D. Tex. Nov. 22, 2017) ("*MacKenzie III*"). The court (1) dismissed MacKenzie's procedural due process claim under Rule 12(c) because he identified no government benefit to which he had a legitimate claim of entitlement, *id.* at *6–8; (2) dismissed his substantive due process claim under Rule 12(c) because he failed to plausibly plead that HUD's actions deprived him of any right, *id.* at *8–9; and (3) dismissed under Rule 12(b)(1) the claims against DOJ for lack of standing to pursue prospective injunctive relief, *id.* at *10–11. After dismissing the case with prejudice as to the HUD defendants and without prejudice as to the DOJ defendants, the court entered final judgment. *Id.* at *13. MacKenzie did not appeal.

There is yet another case related to this matter. In February 2018, Lockey sued HUD and DOJ on substantially similar claims in the U.S. District Court for the Southern District of California. *Lockey v. Carson*, No. 18-cv-0344 (S.D. Cal. filed Feb. 14, 2018). The defendants moved for dismissal on several grounds, including that the judgment in MacKenzie's Texas suit precluded Lockey's claims seeking the same relief. *See* Defs.' Mot. to Dismiss, *Lockey v. Carson*, No. 18-cv-0344 (S.D. Cal. Apr. 17, 2018), ECF No. 4. Without addressing the merits, the district court transferred the case to the Northern District of Texas. Transfer Order, *Lockey v. Carson*, No. 18-cv-0344 (S.D. Cal. Jan. 8, 2019), ECF No. 35-1. The Northern District stayed

proceedings while Lockey pursued relief in the U.S. Court of Appeals for the Ninth Circuit. *See* Elec. Order, *Lockey v. Carson*, No. 19-cv-0065 (N.D. Tex. June 29, 2019), ECF No. 46. Lockey failed to secure relief there, and the cases are now closed in both districts.

In the meantime, MacKenzie, again proceeding *pro se*, filed this case in February 2020. He sues HUD, the Secretary of HUD, DOJ, and the Attorney General (collectively, "the Government"), repeating many of the same claims that he pursued in Texas and that Lockey pursued in California. *See* Compl. at 20–42. He alleges that HUD violated provisions of the FHA, Title VI, Section 504 of the Rehabilitation Act of 1973, and various implementing regulations. *Id.* at 2. He also claims that DOJ and HUD colluded to impede the investigation and ultimately to violate his due process rights. *Id.* at 27–29.

The Government has moved to dismiss under Rules 12(b)(1) and 12(b)(6), contending that MacKenzie's claims are precluded, and alternatively that they are beyond the statute of limitations, are inadequately pled, or rely on a faulty notion of standing. *See* Defs.' Mem. of P. & A. in Support of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 20–30, ECF No. 7-1. The motion is now ripe for disposition. The Court has jurisdiction under 28 U.S.C. § 1331.

## II.

As relevant here, the Government moves to dismiss MacKenzie's complaint as barred by the doctrine of res judicata. "When res judicata bars a claim, it is subject to dismissal under [Federal Rule of Civil Procedure] 12(b)(6)." *Alford v. Providence Hosp.*, 60 F. Supp. 3d 118, 123 (D.D.C. 2014). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the allegations so, to survive, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

Under 12(b)(6), the Court assumes all factual allegations in the complaint are true and construes the facts "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). But the Court will not assume the truth of legal conclusions. *Iqbal*, 556 U.S. at 678. In analyzing res judicata, the Court may take judicial notice of its own record, public records from other proceedings, and documents attached as exhibits or incorporated by reference in the pleadings. *See Alford*, 60 F. Supp. 3d at 123–24.

The Government also moves to dismiss under Rule 12(b)(1), claiming this Court lacks jurisdiction over MacKenzie's claims because he fails to challenge a final agency action as required by the APA, *see* Defs.' Mem. at 25–28, and he lacks standing to sue DOJ, *see id.* at 29–30. When ruling on a motion to dismiss under Rule 12(b)(1), the Court similarly must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). But the factual allegations receive "closer scrutiny" than in the 12(b)(6) context. *Delta Air Lines, Inc. v. Exp.-Imp. Bank of United States*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015). And the plaintiff bears the burden of establishing by the preponderance of the evidence that the Court has jurisdiction. *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). The Court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Id.* at 14 (cleaned up).

The Court notes that MacKenzie proceeds without counsel. This triggers special solicitation for him. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

6

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). More, the Court must assess a *pro se* complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown*, 789 F.3d at 152 (cleaned up).

### III.

### A.

The Government contends that because MacKenzie brought and lost the same claims in Texas, "the doctrine of res judicata precludes him from taking a second bite at the apple." Defs.' Mem. at 20. The Court agrees, but with one caveat.

Under res judicata (also known as claim preclusion), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine protects parties "from the exposure and vexation attending multiple lawsuits" and it "conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (cleaned up). A litigant cannot escape the doctrine's effects merely by raising a new legal theory or seeking a different remedy in a new case. *See SBC Commc'ns, Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005).

But for res judicata to preclude a claim, a litigant must have had a "full and fair opportunity" to raise it. *Velikonja v. Ashcroft*, 355 F. Supp. 2d 197, 201–02 (D.D.C. 2005). So it does not apply to claims that "would have been utterly impracticable to join in an earlier suit or those that could not have been anticipated when the first suit was filed." *Id.* at 201 (cleaned up).

Res judicata applies when there has been "prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies," and (3) "a court of competent

7

jurisdiction" has (4) issued "a final, valid judgment on the merits." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (cleaned up).  The Court considers each element in turn.

*First*, do this case and the Texas case involve the same cause of action?  "Whether two cases implicate the same cause of action turns on whether they share the same nucleus of facts." *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (cleaned up).  This is so because res judicata bars not only the legal claims actually raised in prior litigation "but also ones that a party could have raised" based on the same transaction or occurrence.  *NRDC. v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988).

Here, there is no question that the same nucleus of facts is at issue:  HUD's investigation of Dallas and DOJ's alleged interference in that investigation.  Indeed, MacKenzie has raised some claims identical to those in the Texas case. *Compare* Compl. at 20–42, *with MacKenzie I*, 2016 WL 3906084, at *2 n.5 (listing MacKenzie's claims against HUD under the FHA).  To be sure, MacKenzie raises many grievances about the results of the Texas action.  *See* Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 29–36, ECF No. 13.  But at no point has he disputed that he did not or could not have brought all his claims then.  After all, the alleged actions and inactions by the Government that underlie MacKenzie's claims all occurred between 2010 and 2014, before MacKenzie filed his 2015 suit in Texas.

*Second*, do these cases involve the same parties or their privies?  They do.  Here MacKenzie sues HUD, the Secretary of HUD, DOJ, and the Attorney General, *see* Compl. at 1, just as he did in Texas, *see MacKenzie II*, 2017 WL 1021299, at *2.  It matters not that the individuals holding the offices of Secretary and Attorney General have changed, as an official-capacity suit is treated as a suit against the government entity.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Middleton v. U.S. Dep't of Lab.*, 318 F. Supp. 3d 81, 87 (D.D.C.

2018) ("[A] previous lawsuit against any federal agency can have a preclusive effect on all future litigation against the Government").  This element is satisfied.

*Third*, was there a decision by a court of competent jurisdiction?  Yes, and Mackenzie does not suggest otherwise.  *See Smalls*, 471 F.3d at 192 (observing that an Article III court is a court of competent jurisdiction).

*Fourth*, has there been a final, valid judgment on the merits?  Yes.  The Northern District of Texas dismissed several of MacKenzie's claims with prejudice under Rule 12(b)(6) and 12(c).  These include his allegations that HUD violated the FHA by entering into the VCA, *see MacKenzie II*, 2017 WL 1021299, at *11–12 (dismissing claims under Rule 12(b)(6)), and his claims against HUD for violating his due process rights, *see MacKenzie III*, 2017 WL 5626349, at *6–8 (granting judgment on the pleadings to HUD under Rule 12(c)).  The rulings supported the district court's decision to enter final judgment against MacKenzie, and it has preclusive effect.  *See Middleton*, 318 F. Supp. 3d at 87 ("[A] previous action that resulted in a dismissal under Rule 12(b)(6) for failure to state a claim presents a ruling on the merits with a res judicata effect for the purposes of the final judgment required under *Smalls*.") (cleaned up); *Murchison, next friend of A.M. v. District of Columbia*, No. 20-0283, 2020 WL 4569421, at *2 (D.D.C. Aug. 7, 2020) ("A ruling on a Rule 12(c) motion is a judgment on the merits.") (cleaned up); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("[Rule] 12(b)(6) presents a ruling on the merits with res judicata effect").  So res judicata precludes MacKenzie from pursuing here the same claims that the Northern District dismissed under Rules 12(b)(6) and 12(c), as well any claims he could have but failed to bring then.  *See Thomas*, 838 F.2d at 1252.

But contrary to the Government's suggestion, *see* Defs.' Mem. at 15–16, that does not cover every claim that MacKenzie raises.  The Northern District dismissed some claims against

9

HUD under Rule 12(b)(1) on jurisdictional grounds; it explained that the APA waives sovereign immunity only for challenges to a "final agency action for which there is no other adequate remedy in a court," while MacKenzie's allegations centered on non-final actions by HUD. *MacKenzie II*, 2017 WL 1021299 at *4 (quoting 5 U.S.C. § 704); *see also id.* at *4–11. And the court dismissed all the claims against DOJ under Rule 12(b)(1) for lack of standing. *MacKenzie III*, 2017 WL 5626349 at *9–11. MacKenzie repeats some of those claims here. *See* Compl. 22–40 (challenging non-final actions by HUD and accusing DOJ of interfering with the investigation). But "a jurisdictional dismissal does not involve 'an adjudication on the merits,'" so it does not support a "final judgment" for res judicata purposes. *Nat'l Ass'n of Home Builders v. E.P.A.*, 786 F.3d 34, 41 (D.C. Cir. 2015).

Even so, MacKenzie's claims that survive res judicata are doomed by collateral estoppel. Also known as issue preclusion, the doctrine "bars successive litigation of an issue of fact or law actually litigated and resolved that was essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (cleaned up). Collateral estoppel applies to jurisdictional determinations such as a standing and sovereign immunity. *See Cutler v. Hayes*, 818 F.2d 879, 889 (D.C. Cir. 1987). Once a competent court dismisses a claim on jurisdictional grounds, "a second complaint cannot command a second consideration of the same jurisdictional claims," unless circumstances have materially changed. *Nat'l Ass'n of Home Builders,* 786 F.3d at 41. There is no doubt that the jurisdictional issues were litigated in and resolved by the Northern

District, so collateral estoppel bars MacKenzie from contesting the jurisdictional determinations here.[4] The Court will dismiss all MacKenzie's claims.[5]

**B.**

MacKenzie offers five reasons that his claims should proceed despite the prior judgment in Texas. None are persuasive.

*First*, MacKenzie contends that res judicata does not apply to APA claims because Congress failed to codify the doctrine in the Administrative Procedure Act itself. Pl.'s Opp'n at 26–29. But courts do not need Congress's permission to apply this common law doctrine. And circuit precedent relying on res judicata to dismiss challenges under the APA puts MacKenzie's argument to rest. *See, e.g.*, *Smalls*, 471 F.3d at 192.

*Second*, MacKenzie asserts that he did not have "a full and fair opportunity to litigate in the Northern District of Texas." Pl.'s Opp'n at 29. To be sure, res judicata cannot apply against a party who did not have a fair opportunity to appear and argue his claims in prior litigation. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 480 (1982). But MacKenzie's litany of complaints about the Texas litigation do not come close to suggesting that it was so fundamentally unfair as to not merit preclusive effect. *Cf. id.* at 481 (looking to "the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause"). For example, he criticizes the Northern

---

[4] It matters not that the Northern District dismissed the claims against the DOJ defendants without prejudice. "[E]ven a jurisdictional judgment that results in dismissal without prejudice may [] nevertheless have issue preclusive—if not claim preclusive—effect." *Rodriguez v. Shulman*, 844 F. Supp. 2d 1, 10 (D.D.C. 2012).

[5] Having determined that MacKenzie's claims are precluded and thus cannot proceed, the Court need not address the Government's alternative arguments that the claims are barred by the statute of limitations or fail to state a claim. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("A federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (cleaned up).

District for permitting the Government to file more than one motion to dismiss and for accepting late filings by the Government. *See* Pl.'s Opp'n at 30–36. The Court declines MacKenzie's invitation to scrutinize and second-guess any of those procedural rulings. MacKenzie could have appealed to the Fifth Circuit but apparently chose not to. This Court does not sit in judgment over a sister district court. *Cf. City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297 (2013) ("even an erroneous judgment is entitled to res judicata effect"). MacKenzie has provided no basis to doubt the fundamental fairness of the federal court judgment in Texas.

*Third*, MacKenzie suggests that the Northern District's determination that it lacked jurisdiction to address some of his claims vitiates any preclusive effect that the court's final judgment could have. Pl.'s Opp'n 37–41. MacKenzie appears to misunderstand jurisdiction. A court may have subject matter jurisdiction to hear some claims while lacking jurisdiction to hear others. As a result, that the Northern District dismissed on jurisdictional grounds some claims against HUD and all the claims against DOJ does not mean that it lacked jurisdiction to decide any other claim on the merits. This distinction is why res judicata bars only some of MacKenzie's claims and collateral estoppel precludes others.

*Fourth*, MacKenzie maintains that none of his claims were adjudicated "on the merits" as the doctrine of res judicata requires because there was no trial or summary judgment determination. Pl's Opp'n at 42–44. But recall case law makes clear that res judicata applies to dismissals under Rule 12(b)(6) and Rule 12(c). *See, e.g.*, *Haase*, 835 F.2d at 906 ("[Rule] 12(b)(6) presents a ruling on the merits with res judicata effect"). MacKenzie's confusion on this point is understandable but still wrong.

*Fifth*, MacKenzie invokes the "curable defects exception," arguing that it saves his claims from dismissal. Pl.'s Opp'n at 45–46. Here he has the law correct. The exception exists and

"allows relitigation of jurisdictional dismissals when a precondition requisite to the court's proceeding with the original suit was not alleged or proven and is supplied in the second suit." *Nat'l Ass'n of Home Builders*, 786 F.3d at 41 (cleaned up).  But MacKenzie falls short in justifying why it would apply here.  The exception requires a showing of "a material occurrence subsequent to the original dismissal" that "remedies" the defect.  *Scahill v. D.C.*, 909 F.3d 1177, 1182 (D.C. Cir. 2018); *see also Nat'l Ass'n of Home Builders*, 786 F.3d at 41 (noting that the "exception is sharply limited" by this requirement).  MacKenzie identifies no occurrence since the dismissal of his Northern District case that would justify any changes to the court's analysis on standing or sovereign immunity.  That he filed a new complaint in a new court cannot, by itself, cure any defects.  MacKenzie simply seeks a different outcome than he received in Texas, but the Court must honor the previous rulings.  Res judicata and collateral estoppel apply here.

**IV.**

For these reasons, the motion to dismiss will be granted.  A separate Order will issue.


Dated: March 18, 2021                                          TREVOR N. McFADDEN, U.S.D.J.